IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Pugh, | : | CIVIL ACTION |
| | : | |
| Petitioner, | : | NO. 07-3399 |
| | : | |
| v. | : | |
| | : | |
| James Wynder, | : | |
| | : | |
| Respondent. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                          June 10, 2008

Presently before the Court are Petitioner's Objections to the Report and Recommendation (R&R) produced by Magistrate Judge Perkin.  For the reasons stated below, the R&R is approved and adopted with some additions and modifications to its reasoning. No certificate of appealability will be issued.

**I.  PROCEDURAL BACKGROUND**[1]

Petitioner, Michael Pugh, was convicted of robbery in 2002 in the Philadelphia Court of Common Pleas.  The trial court denied Petitioner's post-sentence motion in April 2003, and in June 2004 the Pennsylvania Superior Court affirmed.  The Pennsylvania Supreme Court then denied allocatur on November 12, 2004.  Petitioner filed a habeas petition in this Court in January 2005.  In May 2005, the petition was denied without prejudice, with the instruction that Petitioner could refile following exhaustion of his state court remedies.  Petitioner promptly filed

---

[1] The Magistrate Judge set forth a more detailed picture of the procedural and factual background, and accordingly, the Court incorporates these by reference into this opinion. Additionally, the Court incorporates the Magistrate Judge's discussion of the legal framework for assessing the various claims at issue.

a petition in state court pursuant to Pennsylvania's Post-Conviction Relief Act (PCRA), 42 Pa. C.S.A. § 9541, et seq. The trial court denied the petition, and the Superior Court affirmed in June 2007. With his claim now exhausted in state court, Petitioner filed a new habeas claim here in August 2007. On September 25, 2007, this Court referred the Petition to Magistrate Judge Perkin for preparation of an R&R. The Magistrate Judge issued the R&R on March 27, 2008, in which he recommended that all of Petitioner's claims be denied. On April 10, 2008, Petitioner filed the present Objections to the Magistrate Judge's R&R.

## II. DISCUSSION

Petitioner raises three objections to the Magistrate Judge's R&R. Petitioner first objects to the Magistrate Judge's analysis of his Crawford claim. Petitioner next objects to the R&R's conclusion that Petitioner's counsel was not ineffective for failing to raise the Crawford issue on direct appeal. Finally, Petitioner objects to the Magistrate Judge's analysis concerning the admission of habit evidence at trial. In all three cases, Petitioner's objections are without merit. The Court thus approves and adopts the Magistrate Judge's R&R.

### A. The Crawford Claims

At trial, the state court judge allowed the prosecutor to elicit testimony from two police officers, Officer Gregory Rice and Detective Steven Grace, recounting conversations with the victim of a crime.[2] The victim, Joseph Bianco, died after the incident but before the trial, and was therefore unavailable to testify at trial. The conversations concerned the following events. After making a bank withdrawal, Bianco was robbed and assaulted. In his attempt to stop the

---

[2] Unless indicated otherwise, these facts are drawn from the R&R, which, in turn, are drawn from the state court record. (See R&R at 1 n.2.)

perpetrator, Bianco was dragged by a car being used for the escape. As Officer Rice arrived at the scene, the perpetrator had not yet been apprehended. Finding Bianco prone in the street and bleeding, he asked Bianco what happened. Bianco responded that he had been robbed and gave a description of the assailant. Some time later, after a car chase, Petitioner, who matched Bianco's description, was arrested and charged with the crime. At trial, Officer Rice testified as to his conversation with Bianco, including the description.

After Petitioner was arrested, Detective Grace, who was assigned to the case, further questioned Bianco in the police station. Detective Grace also testified as to the contents of his interview. However, it was Petitioner's counsel who called Detective Grace to the stand. On direct and in response to Petitioner's counsel, he testified as follows:

> Q. And are you the detective who was assigned to an investigation of an alleged robbery of Joseph Bianco on May 10th of 2000?
> A. Yes, I was.
> Q. In connection with your investigation, did you interview Mr. Bianco?
> A. Yes, I did.
> Q. Where did that interview occur?
> A. Inside Northwest Detectives.
> Q. When did that interview occur?
> A. The day of the incident.
> Q. What time did the interview occur?
> A. In the afternoon, I don't remember the specific time.
> . . .
> Q. [Mr. Bianco] did state to you that the Complainant's left-hand pants pocket was ripped and the Complainant's wallet was taken from his left-hand pants pocket?
>  . . .
> A. Yeah.
> Q. Did Mr. Bianco also give you information as to how much money he had on his person that day?
> A. Yes. He had estimated over $600.
> Q. And he did tell you how much money he withdrew from the bank that day?
> A. Yes, he did. Over $500.
>  . . .

>    Q. He did tell you he had other money besides what he withdrew at the bank?
>    . . .
>    A. Over $100
>    . . .
>    Q. For an amount that would obviously be in excess of $600. Correct?
>    A. That is correct.
>    . . .
>    Q. Now, specifically, what Mr. Bianco told you was that his wallet was taken. Is that right?
>    A. That is correct.

(Trial Tr. Vol. 2, 87-89, Oct. 30, 2002.) On cross-examination, Detective Grace further testified about his interview with Bianco, again recounting Bianco's account of the assault, but providing no additional from Officer Rice's testimony. (Id. 89-91.)

In his first objection, Petitioner argues that the Magistrate Judge improperly analyzed his claim brought pursuant to the Supreme Court's holding in Crawford v. Washington, 541 U.S. 36 (2004), by (1) incorrectly determining that the hearsay statements offered by Officer Rice were non-testimonial; and (2) altogether failing to consider Detective Grace's testimony.[3]

---

[3] Petitioner also complains of the Magistrate Judge's failure to consider evidence from Petitioner's first trial, which ended without a conviction. (Petr.'s Obj. 3-4.) Petitioner argues that certain testimony revealed that other witnesses were interviewed at the crime scene, that these statements were testimonial, and therefore that their use at trial violated the Confrontation Clause. (Id. (citing Trial Tr. vol. 1, 4-11, 41-49, June 29, 2001).) We first note that any error in admitting evidence at the first trial is irrelevant, since Petitioner was not convicted on the basis the first trial's evidence.

Even setting aside this point, Petitioner does not assert that any hearsay testimony was admitted concerning these witnesses. Petitioner thus misunderstands the hearsay rule and its relationship to the Confrontation Clause, neither of which prevent the authorities from gathering information. The Confrontation Clause of the Sixth Amendment was designed to protect criminal defendants from the introduction of hearsay evidence in certain circumstances. See Crawford v. Washington, 541 U.S. 36, 53 (2004) (explaining, after a thorough historical analysis, that the "primary object" of the Sixth Amendment's Confrontation Clause was to protect against "testimonial hearsay"). At its most basic level, then, a petitioner must allege that a hearsay statement was introduced at trial. A hearsay statement is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Petitioner does not allege the introduction of any hearsay

### 1. Officer Rice's Testimony

As to Officer Rice's testimony, the Court agrees with the Magistrate Judge that there was no clear error on the part of the state court in its legal conclusion that Bianco's statements were non-testimonial.

In Crawford, the Supreme Court held that "testimonial statements of witnesses absent from trial" are admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness]." 541 U.S. 36, 59 (2004). The central question here is whether the hearsay statements at issue were "testimonial." The Court did not elaborate in Crawford on the difference between testimonial and non-testimonial statements, a task the Court later took up in the subsequent case of Davis v. Washington, 547 U.S. 813 (2006). In Davis, the Supreme Court concluded that statements were non-testimonial when they were made in the course of an "ongoing emergency." There, a woman involved in a domestic dispute made a 9-1-1 call. The operator asked a number of questions to assess the situation. While the violence had apparently concluded, the victim indicated that her assailant was still in her home. At trial, when the victim was unavailable to testify, the trial court admitted the statements made to the operator to help prove the defendant's guilt. Id. at 817-19. The Supreme Court concluded that the conversation was non-testimonial because this type of questioning was "not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance." Id. at 827 (alterations and internal quotation

---

statements from these witnesses. Petitioner only cites trial testimony indicating that officers interviewed other witnesses, but the content of these interviews was not revealed. See Trial Tr. vol. 1, 4-11, 41-49, June 29, 2001. Therefore, the Magistrate Judge did not err by failing to consider this testimony in Petitioner's Crawford claim.

marks omitted).  The Court added,

> [T]he nature of what was asked and answered in Davis . . . was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past.  That is true even of the operator's effort to establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon.

Id.[4]

In this case, the state courts concluded, and the Magistrate Judge agreed, that an emergency was ongoing because the perpetrator was speeding away in a car, fleeing the scene. (R&R at 9 (citing both the trial court and superior court conclusions on PCRA review).) Petitioner disagrees.  Petitioner argues in his Objection that the victim's statements were not made while "in the midst of an ongoing emergency." (Petr.'s Obj. 4.)  He explains that "[w]hile there was certainly an investigation going on, any semblance of an emergency had passed." (Id.)

Petitioner's argument is misguided.  As Officer Rice arrived to the scene, the victim had just been robbed and injured.  Officer Rice understandably asked the victim, who was bleeding, what had happened.  Considering these circumstances, the Court agrees that Officer

---

[4] In its Davis opinion, the Supreme Court also considered another case, Hammon v. Indiana, 547 U.S. 813 (2006).  In his Objection, Petitioner cites frequently to Hammon. However, rather than supporting his claim, the differences between Hammon and Davis illustrate why there was no error in admitting Officer Rice's testimony.  In Hammon, the police, responding to a reported domestic dispute, arrived at the home of a married couple late one night. Id. at 819.  Upon arriving, the officers determined that the violence was over.  The wife indicated that the violence had ended. Id. at 829-30.  The police questioned the wife in one room while they kept her husband in another room, ensuring no further violent eruptions. Id. at 819-21.  The questioning officer admitted that he questioned the wife to gather evidence for a possible prosecution. Id. at 830.  Given these circumstances, the Court concluded that the wife's statements were testimonial because the emergency had ended.
       Here, the facts lend themselves to Davis rather than Hammon.  It appeared to Officer Rice that there was an ongoing emergency.  The victim was recently injured.  The assailant was on the run.  The officer was trying to respond to a developing situation, not one that had already concluded.

Rice was responding to an ongoing emergency. As in Davis, the questions were designed to respond to ongoing events—both the injuries to Bianco and the fleeing perpetrator. This is true even of Officer Rice's "effort to establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon." Id. Subsequent events—where Petitioner apparently crashed his car and then hid under it—only highlight that an emergency was still underway. For all these reasons, the statements were non-testimonial, and therefore do not offend the Confrontation Clause.

### 2. Detective Grace's Testimony

Detective Grace's testimony, on the other hand, presents a different set of issues. Even though Petitioner separately raised Detective Grace's testimony in his Petition, the Magistrate Judge provided no analysis of whether that testimony violated Petitioner's confrontation rights. The Court agrees with Petitioner that the Magistrate Judge should have separately considered this testimony. In contrast to Officer Rice's testimony, by the time Detective Grace's interrogation had begun—in the police station, after being assigned to investigate the robbery, and after Petitioner had been apprehended—the emergency had concluded. Detective Grace's questions were designed to gather information for a possible prosecution, to investigate past events. Thus, these statements were testimonial. At trial, Detective Grace testified as to the contents of his conversation with Bianco. Thus, at the outset, it appears that this part of Petitioner's Crawford claim, which the Magistrate Judge did not consider, has some merit.

Still, there are at least three reasons that this Court must deny the Petition. First, Detective Grace's testimony was elicited in response to questioning from Petitioner's counsel,

and thus any objection to the entry of his hearsay statements was waived. Second, this claim is procedurally barred because the distinct issue of Detective Grace's testimony was not exhausted in state court and can no longer be exhausted because the statute of limitations has expired. Third, as discussed in the next section of this opinion, the Court concludes that Detective Grace's testimony was harmless, even assuming it violated the Confrontation Clause.

As to waiver, Detective Grace only testified after being called by Petitioner. Petitioner's own counsel elicited the hearsay statements quoted above. On cross-examination, the prosecutor further questioned Detective Grace, bringing out further hearsay, but at this point, the door had been opened on direct and Petitioner's counsel did not object to any of Detective Grace's testimony. Clearly, then, any further objection was waived. See United States. v. Gibbs, 739 F.2d 838 (3d Cir. 1984) (refusing to consider a Confrontation Clause claim concerning evidence that was not timely objected to (citing Fed. R. Evid. 103(a)(1))).

As to procedural default, it is well established that a prisoner must present all of his claims through a state's appeals system before a district court may entertain a federal petition for habeas corpus. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 845, 847 (1999); Evans v. Court of Common Pleas, Del. County, Pa., 959 F.2d 1227, 1230 (3d Cir. 1992). "The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of state courts in protecting federally guaranteed rights." Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir.). To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim raised in the federal petition was "fairly presented" to the state courts. Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Petitioner must show that "the claim brought in

federal court [is] the substantial equivalent of that presented to the state courts. Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts." Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989) (citations omitted).

As set out in the procedural history section above, Petitioner exhausted his claims when he sought relief under the PCRA and appealed to the Pennsylvania Supreme Court. However, we conclude that Petitioner did not "fairly present" to the state the distinct issue of whether Detective Grace's testimony violated Crawford. In his PCRA appeal to the Superior Court, Petitioner, who was at that time represented by counsel, framed the issue as follows: "Was it ineffective assistance of counsel to fail to raise the applicability of Crawford v. Washington, a case that dramatically changed the law in a way that made inadmissible key testimony against the Appellant, when the case was decided during a pending appeal?" See Br. Behalf Appellant at 8, Pennsylvania v. Pugh, 2459 EDA 2006 (Penn. Sup. Ct. July 12, 2007). In his "Statement of the Case," Petitioner described the offending hearsay: "The Commonwealth presented Bianco's statements through Officer Gregory Rice . . . under an 'excited utterance' exception to the hearsay rule. Said evidence was essential to linking the appellant to the crime." Id. at 9-10. There was no mention of Detective Grace in this facts section. In the Argument section, Petitioner made just one citation to Detective Grace's testimony: "Bianco also gave another statement two days later to another police detective." Id. at 17 (citing Grace's testimony at trial). Yet Petitioner did not draw any connection between this testimony and his Crawford claim. His Brief concluded, "Officer Rice's testimony as to the hearsay statements of Bianco should not have been permitted." Id. at 18.

Petitioner failed to explain or even set forth the facts of Detective Grace's

9

testimony as it related to his Crawford claim.  Given that Petitioner was represented by counsel, this Court concludes that this issue was not fairly presented to the state court.  As is clear, the state court cannot be expected, in such circumstances, to divine a petitioner's meaning, or to discover in his citations new claims or further applications of his existing claims.  Because the claim was not fairly presented, the claim was not exhausted.  Therefore, this Court may not now consider this new basis for relief.

Furthermore, according to Pennsylvania law, Petitioner now has no recourse for exhausting the claim in state court because the statute of limitations has run out, and the claim is thus procedurally defaulted.  The PCRA states that "[a]ny petition under this subchapter . . . shall be filed within one year of the date the judgment becomes final."  42 Pa.C.S.A. § 9545(b).  Petitioner's judgment became final on Feb 12, 2005,[5] meaning he then had until February 12, 2006, to seek collateral relief.  The Pennsylvania Supreme Court has conclusively established that the one-year statute of limitations acts as a jurisdictional bar and is not subject to equitable tolling.  Commonwealth v. Fahy, 737 A.2d 214, 222 (Pa. 1999).  Because Petitioner cannot now return to the Pennsylvania courts, this unexhausted claim—that the introduction of Bianco's hearsay statements through Detective Grace's testimony violated the Confrontation Clause—becomes procedurally defaulted for purposes of habeas review.[6]  Therefore, although

---

[5] The judgment became final ninety days after the Pennsylvania Supreme Court denied allocatur, which was on November 12, 2004.  See 42 Pa.C.S.A. § 9545(b)(3) (judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review); Sup. Ct. R. 13 (allowing ninety days to petition to the United States Supreme Court upon denial of discretionary review at the state court of last resort).

[6] Petitioner has not acknowledged that this procedural bar exists.  He has therefore not attempted to explain why his claim should survive in spite of the procedural default.  That said,

the Magistrate Judge should have separately considered Detective Grace's testimony, the claim was procedurally defaulted.

### B. Ineffective Assistance of Counsel

Because Plaintiff has failed to set forth any grounds upon which his counsel failed to appeal and would have had a likelihood of success, his ineffective assistance of counsel claim also fails.  To prove an ineffective assistance of counsel claim, Petitioner must demonstrate that his counsel was deficient and that the deficiency prejudiced the defendant.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  As the Magistrate Judge correctly noted, counsel cannot be considered ineffective for failing to preserve a claim or argument lacking in merit.  United States v. Sander, 165 F.3d 248, 253 (3d Cir. 1999).  We have already concluded that Petitioner's Confrontation Clause claims lack merit.  Therefore, counsel could not have been ineffective for

---

we examine whether to apply an exception.  To survive procedural default in this context, a petitioner must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  To establish the fundamental miscarriage of justice exception, a petitioner must essentially demonstrate his "actual innocence."  Schlup v. Delo, 513 U.S. 298, 324 (1995); Calderon v. Thompson, 523 U.S. 538, 559 (1998).  Plaintiff has not alleged, let alone demonstrated, his actual innocence, and thus this latter exception does not apply.

As to the former exception, a showing of cause demands that a petitioner establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Coleman, 501 U.S. at 753.  Once cause is proven, a petitioner must also show that prejudice resulted from trial errors that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Murray v. Carrier, 477 U.S. 478, 494, 106 S. Ct. 2639, 2648-49.  There is nothing in the record indicating that an external factor impeded Petitioner from complying with the state rule.  Plaintiff was obviously well aware of Detective Grace's testimony; moreover, he knew of Crawford at that time, and there is nothing that would have prevented him from applying these facts to the Crawford claim.  Therefore, this second exception provides no relief for Petitioner, either.

11

failing to raise the claims on direct appeal.[7]

This Court also agrees with the Magistrate Judge that, even if Bianco's hearsay statements should have been excluded, their inclusion was harmless, and thus counsel's failure to appeal likewise did not prejudice Petitioner.  The state court concluded, and both the Magistrate Judge and this Court agree, that the evidence at trial was substantial even apart from Bianco's statements to Officer Rice.[8]  As the Magistrate Judge explained, a habeas petitioner must show that the complained-of "constitutional error had actual 'substantial and injurious effect' on the judgment . . . ." (R&R at 17 (quoting Fry v. Pliler, 127 S. Ct. 2321 (2007)).)  Because the other evidence was overwhelming, we conclude that any error concerning Officer Rice's testimony was harmless.

This analysis applies with greater force to Detective Grace's testimony.  In comparison to Officer Rice's testimony, Detective Grace's played a small role in Petitioner's prosecution.  The only unique value of the hearsay statements submitted through Detective Grace's testimony was to corroborate that the amount found in Petitioner's possession upon his arrest was equal to the amount Bianco carried prior to the robbery.  While this is a relevant and

---

[7] Petitioner makes much of the point that his counsel could have and should have raised the Crawford issue because Crawford was decided after his conviction but while his case was still awaiting decision on direct appeal. (Petr.'s Obj. 8.)  Although it is true that a petitioner may benefit from a Supreme Court decision made subsequent to trial but prior to disposition on direct appeal, see Griffith v. Kentucky, 479 U.S. 314, 328 (1987), this issue is beside the point.  As explained above, the claim Petitioner's counsel failed to raise lacked merit.  Thus, the ineffective assistance of counsel claim also lacks merit, regardless of the timing of Crawford.

[8] The Magistrate Judge stated, "This evidence includes Martinez's testimony, Petitioner's flight from the crime scene and apprehension hiding under a car after he had crashed his car while fleeing, photographs from the bank's surveillance camera, and Petitioner's possessions of a substantial amount of money and a bank receipt matching Bianco's bank transaction." (R&R at 16.)

valuable piece of circumstantial evidence, it was hardly vital. Other than that, Detective Grace's testimony only served to repeat much of the testimony previously introduced through Officer Rice. Assuming that Officer Rice's testimony was properly admitted and Detective Grace's was not, it is even clearer that the admission of Bianco's statements through Detective Grace was harmless.

For all these reasons, the Court overrules Petitioner's second objection.

**C. Habit Evidence**

At trial, the state court admitted third party testimony, as evidence of habit, that Bianco often carried two-dollar bills. The evidence was used to prove that Bianco may have been carrying such a bill on the day of the incident, which implicated Petitioner because he was found with a two-dollar bill upon his arrest. Petitioner objects to the introduction of this evidence.

This court agrees with the R&R in both of its reasons for denying this claim.[9] First, the claim is procedurally barred because it was not raised on PCRA review, and it is now time-barred. (R&R at 19.) Second, the trial court appears to have correctly applied the rule on habit evidence, which does not disallow third parties to testify as to the habit of another. (R&R at 20 (citing as an example Petrokehagias v. Sky Climber, Inc., No. 96-CV-6965, 2000 WL 1469334, at *2 (E.D. Pa. Sept. 26, 2000)).) Therefore, Petitioner's third objection is also overruled.

---

[9] The Court adds that Petitioner's claim also must be denied because it does not seek relief "on the ground that [Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner cites no constitutional or federal law barring the admission of this kind of habit evidence.

**III.  CONCLUSION**

For the reasons stated above, the Court overrules Petitioner's objections and adopts the Report & Recommendation.  An Order consistent with this Memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Pugh, | : | CIVIL ACTION |
| | : | |
| Petitioner, | : | NO. 07-3399 |
| | : | |
| v. | : | |
| | : | |
| James Wynder, | : | |
| | : | |
| Respondent. | : | |

## ORDER

AND NOW, this 10th day of June, 2008, upon consideration of Petitioner's Objection to the Magistrate Judge's Report & Recommendation, it is hereby **ORDERED** that:

1. The Objections are **OVERRULED**;

2. The Report & Recommendation is **APPROVED** and **ADOPTED**;

3. The Petition for Writ of Habeas Corpus is **DENIED** with prejudice and **DISMISSED** without an evidentiary hearing; and

4. There is no probable cause to issue a certificate of appealability.

This case is **CLOSED.**

BY THE COURT:

*s/ Ronald L. Buckwalter*

RONALD L. BUCKWALTER, S.J.